## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

ATLANTIC SPECIALTY INSURANCE
COMPANY,

          Plaintiff,

   v.

CITY OF CARBONDALE and KODY G. LEEHY,

          Defendants.

Case No.  19-556

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Atlantic Specialty Insurance Company ("ASIC"), for its Complaint for Declaratory Judgment against defendants City of Carbondale ("Carbondale") and Kody G. Leehy ("Leehy"), pursuant to 28 U.S.C. §§ 2201 and 2202, states as follows:

### PRELIMINARY STATEMENT

1.      This is a lawsuit for declaratory judgment to determine the rights and legal obligations of the parties under a liability insurance policy ASIC issued to Carbondale (the "Policy"). Specifically, ASIC seeks a declaration that it owes no insurance coverage obligations to Carbondale in connection with a lawsuit Leehy filed against Carbondale, which is pending in the Circuit Court of the First Judicial Circuit, Jackson County, Illinois, styled *Kody G. Leehy, individually and on behalf of similarly situated persons v. City of Carbondale, et al.*, Case No. 2018-MR-116 (the "Leehy Lawsuit").

### PARTIES

2.      ASIC is an insurance company organized and existing under the laws of the State of New York with its principal place of business in Minnesota. ASIC, therefore, is a citizen of New York and Minnesota.

3.      Carbondale is a municipality organized and existing under the laws of Illinois and located in Jackson County, Illinois. Carbondale, therefore, is a citizen of Illinois.

4.      Leehy is a natural person who is domiciled in Illinois and is, therefore, a citizen of Illinois.  Leehy is named in this action as a nominal party whose interests may be affected by a declaratory judgment regarding insurance coverage for the Leehy Lawsuit, and no relief is requested against him other than that he be bound to any declaratory judgment.

## JURISDICTION AND VENUE

5.      The Leehy Lawsuit is denominated as a class action lawsuit and seeks a refund of $400.00 on behalf of each class member of a fee alleged to have been wrongfully collected by Carbondale.  The potential cost of defense of the Leehy Lawsuit and the indemnity of Carbondale for amounts sought in the Leehy Lawsuit totals in excess of $75,000.00, exclusive of interest and costs.  True and accurate copies of the Original Complaint for Declaratory Judgment and Motion to Certify Class filed in the Leehy Lawsuit and served on Carbondale (the "Leehy Complaint") are attached to this Complaint as **Group Exhibit 1**.

6.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 as the amount in controversy exceeds $75,000.00 exclusive of costs and interest, and there is complete diversity of citizenship among the parties.

7.      This Court has personal jurisdiction over Carbondale and Leehy because they are domiciled in, and citizens of, Illinois.

8.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 as this case involves a claim for insurance coverage by Carbondale, which is located within this district, for underlying litigation pending in a state court within this district, and all of the Defendants are subject to this Court's personal jurisdiction.

2

## THE POLICY

9.      ASIC issued the Policy to Carbondale under policy number 791-00-06-10-0005 for the period December 31, 2017 to December 31, 2018.  A true and correct copy of the Policy (with the exception of certain redactions of policy premium information) is attached to, and incorporated by reference in, this Complaint as **Exhibit 2**.  The Policy includes coverage parts for Public Officials Errors and Omissions Liability Coverage, Law Enforcement Liability Coverage, Commercial General Liability Coverage, Business Owners Auto Coverage, and Excess Liability Coverage.

## The E&O Coverage

10.     The Insuring Agreements of the Policy's Public Officials Errors and Omissions Liability Coverage ("E&O Coverage") provide, in relevant part:

A.      **Insuring Agreement — Liability for Wrongful Acts**

1.   We will pay those sums that the insured becomes legally obligated to pay as "damages" for a "claim" resulting from a "wrongful act" to which this insurance applies.
2.   We will have the right and duty to defend the insured against any "suit" seeking those "damages". However, we will have no duty to defend the insured against any "suit" seeking "damages" for a "wrongful act" to which this insurance does not apply. We may, at our discretion, investigate any "wrongful act" and settle any "claim" that may result.

\* \* \*

B.      **Insuring Agreement — Liability for Employment Practices Offense**

1.   We will pay those sums that the insured becomes legally obligated to pay as "damages" for a "claim" resulting from an "employment practices offense" to which this insurance applies.
2.   We will have the right and duty to defend the insured against any "suit" seeking those "damages".  For the purposes of this Coverage **B**, "suit" shall include an Equal Employment Opportunity Commission (EEOC) hearing or proceeding or equivalent state or local agency hearing or proceeding.  However, we will have no duty to defend the

insured against any "suit" seeking "damages" for an "employment practices offense" to which this insurance does not apply. We may, at our discretion, investigate any "employment practices offense" and settle any "claim" that may result.

\* \* \*

**C.    Insuring Agreement — Liability for Employee Benefit Administration Offenses**

1.   We will pay those sums that the insured becomes legally obligated to pay as "damages" for a "claim" resulting from an offense in the "administration" of your "employee benefit plans" to which this insurance applies.

2.   We will have the right and duty to defend the insured against any "suit" seeking those "damages". However, we will have no duty to defend the insured against any "suit" seeking "damages" for an offense in the "administration" of "employee benefit plans" to which this insurance does not apply. We may, at our discretion, investigate any offense in the "administration" of "employee benefit plans" and settle any "claim" that may result.

\* \* \*

11.    The Policy's E&O Coverage includes the following exclusions, among others,

providing that the insurance does not apply to:

**7. Declaratory & Injunctive Relief**

Any "claim" or any part of any "claim" seeking injunctive, declaratory or equitable relief and related costs inclusive of any attorneys' fees or attorneys' expenses.  This includes any amount required to comply with a court or administrative order, judgment, ruling, or decree that results from any action or demand, including, but not limited to, costs or physical alterations required to comply with the Americans with Disabilities Act or similar laws.

\* \* \*

**14. Law Enforcement**

Any "claim" arising directly or indirectly out of, or in any way related to any "law enforcement activity".  This exclusion does not apply to:

a.   An "employment practices offense" committed by your law enforcement agency under Coverage **B** of this Coverage Part; or

4

b.  An offense in the "administration" of "employee benefit plans" committed by your law enforcement agency under Coverage **C** of this Coverage Part.

\* \* \*

**17.  Profit, Advantage or Remuneration**

Any "claim" arising directly or indirectly out of, or in any way related to any insured gaining any profit, advantage or remuneration to which that insured is not legally entitled.

12.  The Policy's E&O Coverage includes the following relevant definitions, among others:

3.  "Claim(s)" means an oral or written demand for payment of money "damages", including a "suit".

4.  "Damages" means money damages.
"Damages" does not include:

\* \* \*

d.  Non-monetary relief;
e.  Payment, restitution, return or disgorgement of any fees, profits, commissions, charges, or any funds allegedly wrongfully or unjustly held or obtained;

\* \* \*

h.  Any matter uninsurable under applicable law.

\* \* \*

11. "Law enforcement activity(ies) means:

a.  Any official activity conducted in the course of your law enforcement operations;
b.  Any officially sanctioned off-duty activity conducted in the course of law enforcement operations;
c.  Ownership, maintenance, operation or use of any premises by your law enforcement operations;
d.  Any criminal prosecution activity by judicial officers, prosecution attorneys and their staff, including public defenders, criminal defense attorneys and their staff; or
e.  Emergency services dispatch operations conducted by you.

\* \* \*

5

22. "Suit" means a civil proceeding alleging "damages" to which this insurance applies. "Suit" includes:

    a. An arbitration proceeding in which "damages" are claimed and to which the insured must submit or does submit with our consent; or

    b. Any other alternative dispute resolution proceeding in which "damages" are claimed and to which the insured submits with our consent.

\* \* \*

25. "Wrongful act(s)" means any actual or alleged act, error, misstatement, misleading statement, omission, neglect or breach of duty by an insured.

### The Law Enforcement Liability Coverage

13.    The Insuring Agreement of the Policy's Law Enforcement Liability Coverage

Form ("LEL Coverage") provides, in relevant part:

**A.    Insuring Agreement — Liability for Law Enforcement Wrongful Acts**

    1. We will pay those sums that the insured becomes legally obligated to pay as "damages" for a "claim" resulting from a "law enforcement wrongful act" to which this insurance applies.

    2. We will have the right and duty to defend the insured against any "suit" seeking those "damages". However, we will have no duty to defend the insured against any "suit" seeking "damages" for a "law enforcement wrongful act" to which this insurance does not apply. We may, at our discretion, investigate any "law enforcement wrongful act" and settle any "claim" that may result.

\* \* \*

14.    The Policy's LEL Coverage Part includes the following exclusion, among others:

**5. Declaratory & Injunctive Relief**

Any "claim" or any part of any "claim" seeking injunctive, declaratory or equitable relief and related costs inclusive of any attorneys' fees or attorneys' expenses. This includes any amount required to comply with a court or administrative order, judgment, ruling, or decree that results from any action or demand, including, but not limited to, costs or physical alterations required to comply with the Americans with Disabilities Act or similar laws.

15.    The Policy's LEL Coverage Part includes the definitions of "claim", "damages",

"law enforcement activities", and "suit" set forth in paragraph 12 of this Complaint.

16.     The Policy's LEL Coverage Part includes the following definition of "law

enforcement wrongful act":

> 8.   "Law enforcement wrongful act(s)" means any actual or alleged act, error,
> misstatement, misleading statement, omission, neglect or breach of duty by an
> insured arising from a "law enforcement activity".

### The CGL Coverage – Bodily Injury & Property Damage

17.     The Insuring Agreement for Coverage A – Bodily Injury and Property Damage

Liability – of the Policy's Commercial General Liability Coverage Form ("CGL Coverage")

provides, in relevant part:

### COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1.      Insuring Agreement**

> a.   We will pay those sums that the insured becomes legally obligated to
> pay as damages because of "bodily injury" or "property damage" to
> which this insurance applies.  We will have the right and duty to
> defend the insured against any "suit" seeking those "damages".
> However, we will have no duty to defend the insured against any
> "suit" seeking damages for a "bodily injury" or "property damage" to
> which this insurance does not apply. We may, at our discretion,
> investigate any "occurrence" and settle any "claim" that may result.

> \* \* \*

> b.   This insurance applies to "bodily injury" and "property damage" only
> if:

> > 1.   The "bodily injury" or "property damage" is caused by an
> > "occurrence" that takes place in the "coverage territory".

> \* \* \*

18.     The CGL Coverage Part for Bodily Injury and Property Damage Liability

includes the following exclusion, among others, providing that the insurance does not apply to:

> **r.      Law Enforcement Activity**

7

"Bodily injury" or "property damage" arising directly or indirectly out of, or in any way related to any "law enforcement activity."

19.     The CGL Coverage Part for Bodily Injury and Property Damage Liability

includes the following definitions, among others:

5.     "Bodily injury" means physical harm, sickness or disease sustained by a person, including death resulting from any of these at any time.  "Bodily injury" also includes mental anguish, emotional distress, or illness if the mental anguish emotional distress or illness results from such physical harm, sickness or disease at any time.
"Bodily injury" also includes loss of care or services resulting from such physical harm, sickness or disease at any time.

* * *

19.     "Law enforcement activity(ies)" means"
a.   Any official activity conducted in the course of your law enforcement operations;
b.   Any officially sanctioned off-duty activity conducted in the course of law enforcement operations;
c.   Ownership, maintenance, operation or use of any premises by your law enforcement operations;
d.   Any criminal, prosecution activity by judicial offices, prosecution attorneys and their staff, including public defenders, criminal defense attorneys and their staff; or
e.   Emergency services dispatched operations conducted by you.

* * *

23.     "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

* * *

28.     "Property damage" means:
a.   Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
b.   Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.
For the purposes of this insurance, "electronic data" is not tangible property.

**The CGL Coverage – Personal and Advertising Injury Liability**

8

20.     The Insuring Agreement B – Personal and Advertising Injury Liability – of the

Policy's CGL Coverage Part provides, in relevant part:

### COVERAGE B – PERSONAL AND ADVERTISING INJURY LAIBILITY

**1.     Insuring Agreement**

    a.   We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any "claim" that may result.

* * *

21.     The CGL Coverage Part for Personal Injury and Advertising Liability includes the

following exclusion, among others, providing that the insurance does not apply to:

**1.     Law Enforcement Activity**

    "Personal and advertising injury arising directly or indirectly out of, or in any way related to any law enforcement activity."

22.     The CGL Coverage Part for Personal Injury and Advertising Liability includes the

definition of "law enforcement activity(ies)" as set forth in paragraph 19 of this Complaint.

23.     The CGL Coverage Part for Personal Injury and Advertising Liability includes the

following additional definition:

24.     "Personal and advertising injury" means injury, including consequential "bodily injury," arising out of one or more of the following offenses:

    a.   False arrest, detention or imprisonment;
    b.   Malicious prosecution;
    c.   The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

9

    d.  Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    e.  Oral or written publication, in any manner, of material that violates a person's right of privacy;

    f.  The use of another's advertising idea in your "advertisement"; or

    g.  Infringing upon another's copyright, trade dress or slogan in your "advertisement".

### The CGL Coverage – Health Care and Social Services Liability

24.    The Insuring Agreement C – Health Care and Social Services Liability – of the CGL Coverage Part provides, in pertinent part:

**1.  Insuring Agreement**

    **a.**  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" arising out of a "health care and social services wrongful act" if a limit for Coverage **C** is shown in the Declarations.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for a "healthcare and social services wrongful act" to which this insurance does not apply.  We may at our discretion investigate any "health care and social services wrongful act" and settle any "claim" that may result. …

* * *

25.    The CGL Coverage Part for Health Care and Social Services Liability includes the following definition of "health care and social services wrongful acts":

15.  "Health care and social services wrongful acts" means a negligent error, omission or act:

    a.  In the performance of or failure to perform health care services by your "employee" or "volunteer worker" who is a first responder, nurse, emergency medical technician or paramedic, but only while acting within the scope of his or her duties to you and while handling a patient:

        (1) At a place where the patient is accepted for movement into or onto a means of transport to a medical facility;

        (2) During transport to a medical facility; or

(3) During movement from the means of transport into the medical facility where the patient is delivered.

b.   In the performance of or failure to perform social services by your "employee" or "volunteer worker" who is licensed, certified or trained to perform social services, including counseling, advice and instruction, but only while acting within the scope of his or her duties to you and while handling a patient or client at your:

(1) Social services department;

(2) Department of health and human services;

(3) Health clinic; or

(4) Substantially similar department or operation.

c.   Relating to the dispatching of, including the failure or refusal to dispatch, personnel to provide any of the services in **a.** above.

26.     * * *The CGL Coverage Part for Healthcare and Social Services Liability includes the Law Enforcement Activity exclusion included in the CGL Coverage Part for Bodily Injury and Property Damage liability, set forth in paragraph 18 of this Complaint.

**The Business Auto Coverage**

27.     The Insuring Agreement of the Policy's Business Auto Coverage Form provides as follows, in pertinent part:

**SECTION II – COVERED AUTOS LIABILITY COVERAGE**

**A.     Coverage**

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto."

We will also pay all sums an "insured" legally must pay as a "covered pollution cost or expense" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos." However, we will only pay for the "covered pollution cost or expense" if there is either "bodily injury" or "property damage" to which this insurance applies that is caused by the same "accident."

11

We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense." However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Covered Auto Liability Coverage Limit of Insurance has been exhausted by payment of judgments and settlement.

\* \* \*

28.    The Policy's Business Auto Coverage includes the following definitions, among others:

### SECTION V – DEFINITIONS

A.    "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage."

B.    "Auto" means:
  1.  A land motor vehicle, "trailer" or semitrailer designed for travel on public roads; or
  2.  Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

  However, "auto" does not include "mobile equipment."

C.    "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these.

\* \* \*

M.    "Property damage" means damage to or loss of use of tangible property.

N.    "Suit" means a civil proceeding in which:
  1.  Damages because of "bodily injury" or "property damage"; or
  2.  A "covered pollution cost or expense";

  to which this insurance applies, are alleged.

  "Suit" includes:
  a.  An arbitration proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the "insured" must submit or does submit with our consent; or
  b.  Any other alternative dispute resolution proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the insured submits with our consent.

### The Excess Liability Coverage

12

29.     The Insuring Agreement of the Policy's Excess Liability Coverage Form provides

as follows:

### SECTION I – COVERAGE

Insuring Agreement – Excess Liability

1.  We will pay those sums that the insured becomes legally obligated to pay as "damages" in excess of all "underlying insurance," but only after all "underlying insurance" has been exhausted by the actual payment of the Limits of Liability of the "underlying insurance."
2.  This excess liability insurance coverage is subject to the insuring agreement terms, exclusions, limitations, conditions and definitions contained within the "underlying insurance," except as otherwise described in this excess liability coverage form and its endorsements.

* * *

30.     The Policy's Excess Coverage provides as follows, in relevant part, regarding

defense of claims and suits:

### SECTION II – DEFENSE

1.  We have no duty to defend or assume charge of any settlement or defense of any "claim" made, "suit" brought, or proceeding instituted against the insured. However, we have the right, but not the duty, and will be provided the opportunity to associate with the insured in the investigation, settlement or defense of any "claim," "suit" or proceeding which in our opinion may create liability under this excess liability policy, whether or not the Limits of Liability of the "underlying insurance" have been exhausted.

* * *

31.     The Policy's Excess Coverage includes the following exclusion, among others,

providing that the insurance does not apply to:

**3.     No Coverage Provided by Underlying Insurance**

Any "claim," loss, cost or expense which is not covered for any reason by any "underlying insurance" to this policy.

32.     The Policy's Excess Coverage includes the following definitions, among others:

### SECTION VI – DEFINITIONS

13

1. "Claim(s)" has the meaning given to it in the applicable Coverage Part of the "underlying insurance."
2. "Damages" has the meaning given to it in the applicable Coverage Part of the "underlying insurance."

* * *

6. "Suit" has the meaning given to it in the applicable Coverage Part of the "underlying insurance."
7. "Underlying insurance" means the Schedule of Liability insurance policies, carriers, policy terms and policy limits shown in the Declarations for this Coverage Form.

## THE LEEHY LAWSUIT

33.     In the Leehy Lawsuit, Leehy, bringing the action for himself and similarly situated persons, seeks "equitable relief and a judicial declaration under 735 ILCS 5/2-701 of the Illinois Code of Civil Procedure that Carbondale Ordinance 18-12-15 (the "Ordinance") is, on its face, unconstitutional because it violates his and the putative class's right to substantive due process." Ex. 1, ¶ 1.

34.     Leehy further alleges in the Leehy Lawsuit that Leehy's automobile was administratively seized and impounded by a Carbondale police officer.  He further asserts that at the time his automobile was seized, he was charged with an Illinois Vehicle Code violation and, pursuant to the Ordinance, was charged an administrative fee of $400, which he paid.

35.     In seeking class certification for the Leehy Lawsuit, Leehy alleges that the proposed class consists of over 2,000 individual claims.

36.     In the Leehy Lawsuit, Leehy requests that the Ordinance be declared unconstitutional and that Carbondale be "ordered to disgorge the administrative fees taken from the Plaintiff and each member of the class under the purported authority of said Ordinance and returned to Plaintiff and each class member." Ex. 1, p. 4.

14

37.     Carbondale tendered the Leehy Lawsuit to ASIC for coverage under the Policy and has requested that ASIC provide a defense for Carbondale in the Leehy Lawsuit.

38.     Following its investigation, ASIC advised Carbondale that the Policy does not afford coverage for the Leehy Lawsuit and that ASIC, therefore, has no obligation to defend or indemnify Carbondale for the suit.

39.     Carbondale disputes ASIC's coverage disclaimer and the dispute is, therefore, ripe for declaratory judgment.

<u>**COUNT I**</u>
**(Declaratory Judgment: No Coverage Under the Policy's E&O Coverage)**

40.     ASIC realleges paragraphs 1-39 above as if set forth fully in this paragraph 40.

41.     The Policy's E&O Coverage Parts A-C obligate ASIC to pay, subject to the Policy's other terms and conditions, certain sums that Carbondale becomes legally obligated to pay as "damages," and provides that ASIC will have the duty to defend Carbondale against any "suit" seeking those "damages." Accordingly, ASIC has no obligation under the Policy's E&O Coverage to pay for relief that does not constitute "damages," as the Policy defines that term, or to defend Carbondale against a suit that does not seek "damages," as the Policy defines that term.

42.     The Leehy Lawsuit is not a suit seeking "damages," as the Policy defines that term. Rather, Leehy seeks declaratory relief and the return or disgorgement of fees, neither of which constitutes "damages" within the Policy's definition of that term.

43.     Furthermore, the Policy's E&O Coverage does not apply to the Leehy Lawsuit because it is a claim seeking declaratory relief and is a claim arising out of, and related to, Carbondale allegedly gaining profit, advantage, or remuneration to which Carbondale is not legally entitled. Therefore, the E&O Coverage Parts' Exclusions 7 (Declaratory and Injunctive Relief) and 17 (Profit, Advantage or Remuneration) apply to bar coverage for the Lawsuit.

15

44.     Moreover, to the extent that the Leehy Lawsuit arises directly or indirectly out of, or is in any way related to, "law enforcement activity," the E&O Coverage Parts' Exclusion 14 (Law Enforcement Activity) applies to bar coverage for the Lawsuit.

45.     Consequently, ASIC has no duty to defend or indemnify Carbondale for the Leehy Lawsuit under the Policy's E&O Coverage.

46.     An actual controversy exists between ASIC and Carbondale with respect to ASIC's obligations in connection with the Leehy Lawsuit in that Carbondale continues to request that ASIC provide Carbondale with a defense and indemnification for the suit, and ASIC denies that it has any obligation to do so.   Consequently, the Court's declaration of the parties' rights and obligations is required to resolve the controversy.

## COUNT II
### (Declaratory Judgment: No Coverage Under the Policy's Law Enforcement Liability Coverage Part)

47.     ASIC realleges paragraphs 1-39 above as if set forth fully in this paragraph 47.

48.     The Policy's Law Enforcement Liability Coverage Part obligates ASIC to pay, subject to the Policy's other terms and conditions, certain sums that Carbondale becomes legally obligated to pay as "damages," for a "claim" resulting from a "law enforcement wrongful act" to which the insurance applies, and provides that ASIC will have the duty to defend Carbondale against any "suit" seeking those "damages."   ASIC's coverage obligations are triggered under the LEL Coverage only if, in the first instance, the "claim" results from a "law enforcement wrongful act."   Moreover, ASIC has no obligation under the Policy's Law Enforcement Liability Coverage to pay for relief that does not constitute "damages," as the Policy defines that term, or to defend Carbondale against a "suit" that does not seek "damages."

49.     The Leehy Lawsuit is not a "suit" seeking "damages," as the Policy defines that term.  Rather, Leehy seeks declaratory relief and the return or disgorgement of fees, neither of which constitutes "damages" within the Policy's definition of that term.

50.     Furthermore, the Policy's Law Enforcement Liability Coverage does not apply to the Leehy Lawsuit to the extent that it is a claim seeking declaratory relief, as the Law Enforcement Liability Coverage Part's Exclusion 5 (Declaratory and Injunctive Relief) applies to bar coverage.

51.     Moreover, to the extent that the Leehy Lawsuit is not a "claim" resulting from a "law enforcement wrongful act," the Policy's Law Enforcement Coverage does not apply to the Leehy Lawsuit.

52.     Consequently, ASIC has no duty to defend or indemnify Carbondale for the Leehy Lawsuit under the Policy's Law Enforcement Liability Coverage.

53.     An actual controversy exists between ASIC and Carbondale with respect to ASIC's obligations in connection with the Leehy Lawsuit in that Carbondale continues to request that ASIC provide Carbondale with a defense and indemnification for the suit and ASIC denies that it has any obligation to do so.   Consequently, the Court's declaration of the parties' rights and obligations is required to resolve the controversy.

## COUNT III
### (Declaratory Judgment: No Coverage Under the Policy's CGL Coverage Parts)

54.     ASIC realleges paragraphs 1-39 above as if set forth fully in this paragraph 54.

55.     The Policy's CGL Coverage Parts A-C obligate ASIC to pay, subject to the Policy's other terms and conditions, certain sums that Carbondale becomes legally obligated to pay as damages because of "bodily injury," "property damage," or "personal and advertising injury," and provides that ASIC will have the duty to defend Carbondale against any "suit"

17

seeking such damages.  Accordingly, ASIC has no obligation under the Policy's CGL Coverage to pay for relief that does not constitute damages because of "bodily injury," "property damage," or "personal and advertising injury" or to defend Carbondale against a suit that does not seek such damages.

56.     The Leehy Lawsuit is not a suit seeking damages.  Rather, Leehy seeks declaratory relief and the return or disgorgement of fees wrongfully obtained, which does not constitute covered damages.

57.     Moreover, the Leehy Lawsuit is not a suit seeking damages because of "bodily injury," "property damage," or "personal and advertising injury," as the Policy defines those terms.

58.     Additionally, the CGL Coverage Part for Bodily Injury and Property Damage applies to a claim only if, among other things, the "bodily injury" or "property damage" is caused by an "occurrence", and the Leehy Lawsuit includes no allegations of an "occurrence", as the Policy defines that term.

59.     The CGL Coverage Part for Health Care and Social Services Liability applies to a claim only if, among other things, alleged "bodily injury" arises out of a "health care and social services wrongful act", and the Leehy Lawsuit includes no allegations of a "health care and social services wrongful act", as the Policy defines that term.

60.     Furthermore, the Policy's CGL Coverage does not apply to the Leehy Lawsuit to the extent that any injury or damage allegedly sustained arises directly or indirectly out of, or is in any way related to, any "law enforcement activity," pursuant to the Law Enforcement Activity Exclusions of the CGL Coverage Parts.

61.     Consequently, ASIC has no duty to defend or indemnify Carbondale for the Leehy Lawsuit under the Policy's CGL Coverage.

62.     An actual controversy exists between ASIC and Carbondale with respect to ASIC's obligations in connection with the Leehy Lawsuit in that Carbondale continues to request that ASIC provide Carbondale with a defense and indemnification for the suit and ASIC denies that it has any obligation to do so.   Consequently, the Court's declaration of the parties' rights and obligations is required to resolve the controversy.

## COUNT IV
### (Declaratory Judgment: No Coverage Under the Policy's Business Auto Coverage Part)

63.     ASIC realleges paragraphs 1-39 above as if set forth fully in this paragraph 63.

64.     The Policy's Business Auto Coverage Part obligates ASIC to pay, subject to the Policy's other terms and conditions, certain sums that Carbondale must pay as damages because of "bodily injury," "property damage," or as a "covered pollution cost or expense," to which the insurance applies, caused by an "accident" and resulting from the ownership, maintenance, or use of a covered "auto."  ASIC has the duty to defend Carbondale only against any "suit" seeking those damages or "covered pollution cost or expense."  Accordingly, ASIC has no coverage obligations under the Policy's Business Auto Coverage with respect to relief that does not constitute damages or "covered pollution cost or expense" or did not result from the ownership, maintenance or use of a covered "auto."

65.     The Leehy Lawsuit is not a suit seeking damages because of "bodily injury" or "property damage," or a "covered pollution cost or expense."  Rather, Leehy seeks declaratory relief and the return or disgorgement of fees, none of which constitutes damages because of "bodily injury" or "property damage," or a "covered pollution cost or expense."

19

66.     Furthermore, the Policy's Business Auto Coverage does not apply to the Leehy Lawsuit because the relief sought was not caused by an "accident" and did not result from the ownership, maintenance, or use of a covered "auto."

67.     Consequently, ASIC has no duty to defend or indemnify Carbondale for the Leehy Lawsuit under the Policy's Business Auto Coverage.

68.     An actual controversy exists between ASIC and Carbondale with respect to ASIC's obligations in connection with the Leehy Lawsuit in that Carbondale continues to request that ASIC provide Carbondale with a defense and indemnification for the suit and ASIC denies that it has any obligation to do so.   Consequently, the Court's declaration of the parties' rights and obligations is required to resolve the controversy.

## <u>COUNT V</u>
### (Declaratory Judgment: No Coverage Under the Policy's Excess Liability Coverage Part)

69.     ASIC realleges paragraphs 1-68 above as if set forth fully in this paragraph 69.

70.     The Policy's Excess Liability Coverage obligates ASIC to pay, subject to the Policy's other terms and conditions, certain sums that Carbondale becomes legally obligated to pay as "damages" in excess of all "underlying insurance," but only after all "underlying insurance" has been exhausted by the actual payment of the Limits of Liability of the "underlying insurance."

71.     The Limits of Liability of the "underlying insurance" have not been paid, so the "underlying insurance" has not been exhausted.

72.     ASIC has no duty to defend any "claim" made, "suit" brought, or proceeding instituted against Carbondale under the Policy's Excess Coverage, as set forth in "Section II – Defense" of the Policy's Excess Coverage Part.

20

73.     ASIC has no obligation under the Excess Liability Coverage for any such sums

Carbondale becomes obligated to pay in the Leehy Lawsuit, because the relief sought is not

"damages", as the Policy defines that term.

74.     Furthermore, the Policy's Excess Liability Coverage does not apply to the Leehy

Lawsuit because, for the reasons set forth in Counts I-IV of this Complaint, it is not covered

under any "underlying insurance" and the Excess Liability Coverage Part's Exclusion 3 therefore

applies to bar coverage under the Excess Liability Coverage Part.

75.     Consequently, ASIC has no duty to defend or indemnify Carbondale for the

Leehy Lawsuit under the Policy's Excess Liability Coverage.

76.     An actual controversy exists between ASIC and Carbondale with respect to

ASIC's obligations in connection with the Leehy Lawsuit in that Carbondale continues to request

that ASIC provide Carbondale with a defense and indemnification for the suit and ASIC denies

that it has any obligation to do so.   Consequently, the Court's declaration of the parties' rights

and obligations is required to resolve the controversy.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff Atlantic Specialty Insurance Company respectfully requests that

this Court:

      a.   Determine and adjudicate the rights and liabilities of the parties under the
Policy;

      b.   Find and declare that the Policy does not cover any loss, expense, or other
relief arising out of or in any way related to the Leehy Lawsuit;

      c.   Find and declare that ASIC has no obligation to defend Carbondale in
connection with the Leehy Lawsuit;

      d.   Find and declare that ASIC has no obligation to indemnify or pay Carbondale
or any other party for any amount in connection with the Leehy Lawsuit; and

e.  Grant such other relief as the Court may deem just and proper.

ATLANTIC SPECIALTY INSURANCE COMPANY

By: ___/s/ Christopher J. Bannon_____
Christopher J. Bannon, ARDC #6196298
Daniel J. Berkowitz, ARDC # 6316874
Aronberg Goldgehn Davis & Garmisa
330 N. Wabash Avenue, Suite 1700
Chicago, IL 60611
Telephone:  (312) 755-3175
Facsimile:  (312) 222-6375
cbannon@agdglaw.com
dberkowitz@agdglaw.com

*Counsel for Atlantic Specialty Insurance Company*

2145818v5